Ibinga BERTIN, Plaintiff–Appellant,

v.

UNITED STATES of America, Defendant–Appellee.

Docket No. 05–4503–cv.

United States Court of Appeals, Second Circuit.

Argued: June 22, 2006.

Decided: Feb. 26, 2007.

490

Ibinga Bertin, Miami, Florida, pro se.

Varuni Nelson, Assistant United States Attorney (Sarah Lum, Assistant United States Attorney, of counsel; Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Defendant–Appellee.

Before JACOBS, Chief Judge,
POOLER, Circuit Judge, and KORMAN, District Judge.*

---

* The Honorable Edward R. Korman, Chief Judge of the United States District Court for the Eastern District of New York, sitting by designation.

JACOBS, Chief Judge.

Ibinga Bertin, *pro se*, seeks return of personal effects that were seized when he was arrested. The district court dismissed Bertin's action because he failed to bring an administrative claim within the statute of limitations. We agree that Bertin's complaint is time-barred, though on different grounds than those relied upon by the district court.

Bertin was arrested on July 27, 1992; following detention by federal customs officials at JFK Airport in Queens, New York, he passed balloons filled with heroin. Bertin pled guilty to one count of importing heroin in violation of 21 U.S.C. § 952(a) and, on December 4, 1992, was sentenced to 37 months imprisonment. At the time of his arrest, customs officials seized $1,000 in cash as well as luggage containing Bertin's personal effects. The cash was returned to Bertin in December 1993, but he says he never received his luggage.

Prior to this action, Bertin *pro se* filed three other actions stemming from his arrest and detention. In February 1993, Bertin filed a complaint in the U.S. District Court for the Eastern District of New York pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671–2680, which demanded the return of the $1,000 and his personal effects. The district court dismissed Bertin's suit in December 1996; Bertin had acknowledged having received the money, and the court dismissed without prejudice Bertin's claim regarding his personal effects after Bertin agreed to file an administrative claim with the U.S. Customs Service.

Bertin waited more than three years, filed one administrative claim on August 12, 1999, and filed another claim on February 7, 2000. On November 22, 2000, the government denied Bertin's claims. Approximately two months later, in January 2001, Bertin filed suit in the U.S. District Court for the Western District of Louisiana pursuant to 42 U.S.C. § 1983 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), challenging conditions of confinement in the Concordia Parish Correctional Facility. That suit was dismissed in May 2001 for failure to prosecute.

In January 2003, Bertin filed the present action in the U.S. District Court for the Eastern District of New York. Under the heading "Relief," Bertin requested that the court order the government to return his property or award him "just compensation"; Bertin also asked for punitive damages. In July 2005, the district court granted the government's summary judgment motion. Construing Bertin's action as one brought pursuant to 28 U.S.C. § 1355, the court dismissed it because he failed to exhaust his administrative remedies by filing no administrative claim within the two-year statute of limitations set forth in 28 U.S.C. § 2401(b). This appeal followed.

■ Although we agree with the district court that Bertin's complaint is time-barred, our analysis is somewhat different. "We may, of course, affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." *Cromwell Assocs. v. Oliver Cromwell Owners, Inc.*, 941 F.2d 107, 111 (2d Cir.1991).

■ We liberally construe pleadings and briefs submitted by *pro se* litigants, *see Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000), reading such submissions "to raise the strongest arguments they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994); *see also Green v. United States*, 260 F.3d 78, 83 (2d Cir.2001). The district court construed Bertin's complaint to assert a claim pursuant to 28 U.S.C. § 1355, which provides for "the recovery

or enforcement of any fine, penalty, or forfeiture"; this statute "was designed to provide jurisdiction with respect to claims involving clear-cut fines and penalties," *South Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910, 912 n. 1 (2d Cir. 1976). Because we do not read Bertin's complaint to allege that the government took his property in satisfaction of a fine or penalty, and because it was not forfeited, we construe it as asserting claims pursuant to the FTCA and Rule 41(g) of the Federal Rules of Criminal Procedure.

The FTCA waives sovereign immunity, *inter alia*, for "claims against the United States, for money damages ... for ... loss of property ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). But the FTCA expressly excepts from its limited waiver of sovereign immunity, "[a]ny claim arising in respect of ... the detention of any goods, merchandise, or other property by any officer of customs ... or any other law enforcement officer." 28 U.S.C. § 2680(c); *see also Adeleke v. United States*, 355 F.3d 144, 153–54 (2d Cir.2004). This includes "a claim resulting from negligent handling or storage of detained property." *Kosak v. United States*, 465 U.S. 848, 854, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984). Thus, insofar as Bertin's claim can be classified as a claim under the FTCA, it is barred by sovereign immunity.

■ But Bertin's complaint also requests relief in the form of the return of his property, a claim that can be read as a motion to return property pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure.[1] Under Rule 41(g), "[a] person aggrieved ... by the deprivation of property may move for the property's return." The Rule recognizes "[a] person aggrieved ... by the deprivation of property may move for the property's return." The Rule recognizes that the federal courts have equitable jurisdiction to order the return of property. However, "Rule 41(g), which simply provides for the return of seized property, does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." *Adeleke*, 355 F.3d at 151. Thus, under Rule 41(g), the court can order the return of property that is in the hands of the government.[2]

■ Bertin was arrested and convicted in 1992; so a conspicuous question is whether Bertin's Rule 41(g) motion is time-barred. Because "[n]o statute of limitations governs motions for return of property under Rule 41(g)," *United States v. Sims*, 376 F.3d 705, 708 (7th Cir.2004), the six-year catch-all statute of limitations for civil actions against the federal government is applied to certain Rule 41(g) motions, *see* 28 U.S.C. § 2401(a) ("[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of

1. In 2002, Rule 41(e) was redesignated Rule 41(g), and amended for style only. *Adeleke*, 355 F.3d at 147 n. 1; *accord United States v. Kaczynski*, 416 F.3d 971, 973 n. 3 (9th Cir. 2005).

2. Since Bertin already received the cash seized upon his arrest, we need not consider whether a court, under Rule 41(g), can order the return of fungible cash. *Compare Perez–Colon v. Camacho*, No. 06–1560, 2006 WL 3361778, at *3 (1st Cir. Nov.21, 2006) (not

precedential) (holding that " 'the fact that the government obviously cannot restore to [appellant] the specific currency that was seized' " does not bar a Rule 41(g) motion (*quoting United States v. Minor*, 228 F.3d 352, 355 (4th Cir.2000))), *with Okoro v. Callaghan*, 324 F.3d 488, 491 (7th Cir.2003) (observing that sovereign immunity bars a Rule 41(g) motion for the return of seized cash that has been deposited into a government account, because the return of those funds would require disbursement from the treasury).

action first accrues."). For example, if a Rule 41(g) motion is "made after the termination of criminal proceedings against the defendant," we treat it "as a civil complaint for equitable relief," *Rufu v. United States,* 20 F.3d 63, 65 (2d Cir.1994) (*per curiam* ), for which § 2401(a) provides the statute of limitations.

This holding accords with our reasoning in *Polanco v. U.S. Drug Enforcement Administration,* which held that the statute of limitations in § 2401(a) applied to an action in equity that sought the return of property alleged to have been taken wrongfully by the government. 158 F.3d 647, 652 (2d Cir.1998). Though *Polanco* did not concern Rule 41(g)—it located the waiver of sovereign immunity in the Administrative Procedure Act ("APA"), 5 U.S.C. § 702—it has been widely read as establishing § 2401(a) as the applicable statute of limitations for Rule 41(g) claims. *See, e.g., United States v. Rodriguez–Aguirre,* 264 F.3d 1195, 1210 (10th Cir. 2001); *United States v. Duke,* 229 F.3d 627, 629 (7th Cir.2000), *superseded on other grounds by* 18 U.S.C. § 983(e)(3); *Garba v. United States,* No. 06 Civ. 381, 2006 WL 3197182, at *1 (E.D.N.Y. Nov. 3, 2006); *Perez v. United States,* No. Cr. 89–0408, 2006 WL 1582187, at *1–2 (E.D.N.Y. Mar.21, 2006); *United States v. Morales,* No. 02 Civ. 10326, 2003 WL 21692752, at *3 (S.D.N.Y. July 21, 2003). We agree with this reading of *Polanco* and join every other circuit court that has considered the issue: 28 U.S.C. § 2401(a) provides the applicable statute of limitations for Rule 41(g) motions made after the termination of criminal or civil forfeiture proceedings. *See United States v. Machado,* 465 F.3d 1301, 1307 (11th Cir.2006) ("Because Rule 41(g) actions filed after the close of the criminal proceedings are treated as civil actions, they are subject to the six-year statute of limitation in § 2401(a)."); *Sims,* 376 F.3d at 708–09 ("[T]he six-year statute of limitations in 28 U.S.C. § 2401(a) is

appropriate ... and so we shall borrow it for Rule 41(g) motions."); *United States v. Wright,* 361 F.3d 288, 290 (5th Cir.2004) ("The district court correctly determined that the six-year statute of limitations in 28 U.S.C. § 2401(a) applies [to Rule 41(g) motions]."); *Rodriguez–Aguirre,* 264 F.3d at 1210 ("[W]e now join the Second, Fourth, and Seventh Circuits in holding that the bringing of Rule 41[g] motions is governed by the general statute of limitations set forth at 28 U.S.C. § 2401(a).").

■■■ When property is seized and not returned or forfeited, "the claimant knows that he has a present right to its return, and shouldn't be permitted to postpone his request for its return indefinitely." *Sims,* 376 F.3d at 708. Therefore, a Rule 41(g) motion accrues when the party seeking return of his property "discovered or had reason to discover that his property" was improperly seized. *Polanco,* 158 F.3d at 654. We held in *Polanco* (in which no related criminal proceeding materialized post-seizure) that the cause of action accrues: (i) at the conclusion of a civil forfeiture proceeding, or (ii) if no civil forfeiture proceeding was conducted, at the end of the five-year limitations period during which the government is permitted to bring a civil forfeiture action. *Id.* Guided by these principles, we hold that where (as here) there has been a related criminal proceeding but no civil forfeiture proceeding, the cause of action accrues at the end of the criminal proceeding during which the claimant could have sought the return of his property by motion, but neither sought such return nor received his property. *Accord Sims,* 376 F.3d at 709; *Rodriguez–Aguirre,* 264 F.3d at 1212. In contrast, where there has been no related criminal proceeding—as in *Polanco*—the claimant cannot be expected to know the government's intentions, and will naturally be hesitant to press the question by focus-

ing on himself the attentions of the prosecutor. *Polanco*, 158 F.3d at 649.

▮▮▮ Bertin was sentenced (and judgment entered) on December 4, 1992; therefore his Rule 41(g) motion accrued on the same day. He filed his Rule 41(g) motion on January 21, 2003, more than ten years after it accrued, well beyond the six-year statute-of-limitations period in 28 U.S.C. § 2401(a). For reasons set out in the margin, even the most generous tolling arguably available on the facts of this case cannot preserve Bertin's claim.[3] It is therefore time-barred.

The judgment is affirmed.

---

**3.** "Equitable tolling applies only in the rare and exceptional circumstance." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir.2000) (*per curiam*) (internal quotations and alterations omitted). We have previously held that equitable tolling may be available for actions against the federal government, *Long v. Frank*, 22 F.3d 54, 58 (2d Cir.1994) (*citing Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)), and may toll the catch-all statute of limitations, 28 U.S.C. § 2401(a), *Polanco*, 158 F.3d at 655. Assuming, *arguendo*, that the limitations period was tolled during the pendency of Bertin's first FTCA action (February 1993 through December 1996), a review of the record indicates that Bertin did not act with reasonable diligence thereafter. "Generally, to merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period she seeks to have tolled." *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir.2002). Bertin waited three years to file an administrative complaint; after that complaint was denied, he filed the *Bivens* action (an action that arguably cannot be construed as a Rule 41(g) motion), which was dismissed for failure to prosecute. "We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *see also Alli–Balogun v. United States*, 281 F.3d 362, 369 (2d Cir.2002). Thus, even tolling the limitations period for the duration of Bertin's 1993 FTCA action, he had to file his Rule 41(g) motion no later than November 2002; he filed it in January 2003, so his Rule 41(g) action is time-barred.